UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-MC-80918-UNA

IN THE MATTER OF THE EXTRADITION
OF ITZHAK AISIK GRYNSZTEIN

**GOVERNMENT'S MOTION FOR EXTRADITION ON FORGERY**

The United States respectfully moves to extradite Itzhak Aisik Grynsztein on all charges, including forgery.

The Netherlands has requested extradition of Grynsztein on charges of operating as a bank without a license, money laundering, and forgery. According to the extradition request, Grynsztein's offense conduct included the following: Grynsztein's family owned, and Grynsztein controlled, Caribbean Pharmaceutical Group ("CPG"). In 2013, CPG entered a contract with B&S Cardservice GmbH ("B&S"), a European payment service provider. In order to obtain the contract, CPG represented that it operated a clothing store in Amsterdam. B&S then provided CPG with PIN entry terminals. However, CPG did not in fact sell clothes in Amsterdam, and instead took the terminals to Curacao, where Grynsztein used them to sell hard currency to Venezuelans in return for credit card charges.

At a status conference on Tuesday, September 8, 2015, Grynsztein stated for the first time that he would argue that extradition on the forgery charge would violated the principle of dual criminality. Grynsztein also requested an immediate hearing. The government stated that it was ready to proceed, although we noted that the hearing that day had been scheduled as a status conference. The Court scheduled the extradition hearing for the next day, yesterday, September 9.

Based on the undersigned's legal research between the status conference and the extradition hearing, the undersigned announced at the hearing that the government would not contest Grynsztein's dual criminality argument, and therefore that we would not seek extradition for forgery. At the conclusion of the hearing, the Court ordered Grynsztein to file a post-hearing brief by September 18, and the government to respond by September 29.

The government did not contest Grynsztein's dual criminality challenge to his extradition on the forgery charge because the government's research to that point had revealed no good-faith basis to do so. However, the government's subsequent research has revealed that the forgery charge does satisfy the requirement of dual criminality, and that extradition of Grynsztein on that charge is appropriate.

The government announced we were ready for the extradition hearing and then conceded the dual-criminality argument. Therefore, it would be within the Court's discretion to refuse to consider our current motion. However, the government requests that the Court instead exercise its discretion to entertain the motion. That exercise of discretion is appropriate for several reasons. First, the Court has not yet ruled on the extradition request, either in whole or in part. Having taken the matter under advisement, the Court would not be bound to accept the legal positions recommended by the parties, even jointly, and Grynsztein has no ground to rely on such an expectation. Second, there will be minimal or no prejudice to Grynsztein if the Court entertains the motion. Even at the hearing, the government requested Grynsztein's extradition; the only new issue we raise now is the specific charges on which he should be extradited. And Grynsztein is already detained pending further briefing. If Grynsztein's counsel responds to this motion in his September 18 filing or by September 18, consideration of this motion need not prolong the

proceedings.[1] Third, the government stated we were ready for a prompt hearing because we knew that Grynsztein wanted a hearing as quickly as possible. Although we agreed to the quick timing of the hearing, the fact remains that the government first learned that Grynsztein would raise dual criminality the day before the hearing, and that we have filed this motion changing our position the day after the hearing. Finally, extradition involves not just the government's interests in criminal litigation, but also the United States' interest in complying with our international obligations. To refuse Grynsztein's extradition based on the undersigned admitted mistake of law, even where that mistake has been promptly corrected, would unfairly penalize the country of the Netherlands, which has properly invoked a treaty with our country. For all these reasons, the government respectfully requests that the Court entertain this motion.

Turing to the merits, Grynsztein's extradition for forgery would not violate principles of dual criminality. The extradition treaty permits extradition only for offenses that are punishable under the laws of both sovereigns. *See* Treaty, Art. 2(1). This requirement codifies the general principle of dual criminality. *See Wright v. Henkel*, 190 U.S. 40, 58 (1903); *Villareal v. Hammond*, 74 F.2d 503, 505–06 (5th Cir.1934); *In re Extradition of Cervantes Valles*, 268 F.Supp.2d 758, 770

---

[1] Grynsztein will not be prejudiced for another reason as well. At the extradition hearing, he argued primarily that the facts set forth in the extradition request do not establish probable cause to believe that he committed the offenses charged. However, the treaty provides that, if the Court agrees with that argument, the remedy is not to deny the extradition request. Rather, the Court "shall request the submission of necessary additional evidence" from the Netherlands. Agreement comprising the instrument as contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union signed at Washington on 25 June 2003, as to the application of the Extradition Treaty Between the United States of America and the Kingdom of the Netherlands signed at the Hague on 24 June 1980, U.S.-Neth., Sept. 29, 2004, S. TREATY DOC. NO. 109-14 (2006), Annex (hereinafter "Treaty"), Art. 10(1). Thus, even if the Court were to accept Grynsztein's arguments, Grynsztein would still have to wait for the Netherlands to amplify its statement of facts, if it chose to do so.

(S.D.Tex.2003). The Netherlands seeks Grynsztein's extradition on a charge of forgery. As described above, Grynsztein's company obtained PIN entry terminals based on a false representation to a financial institution. That false representation constitutes forgery under Dutch law, which is set out in Annex 1 to the extradition request. However, it does not constitute forgery under United States law, because CPG did not misrepresent the provenance or character of any documents. *See Gilbert v. United States*, 370 U.S. 650, 658 (1962) ("Where the 'falsity lies in the representation of facts, not in the genuineness of execution,' it is not forgery."); *United States v. Jones*, 553 F.2d 351, 355 (4th Cir.1977) ("In criminal cases the great weight of authority holds false statements in or fraudulent execution of otherwise valid instruments not to be forgery within its common law or unexpanded meaning.")

Although Grynsztein's actions do not constitute forgery under United States law, that conclusion does not end the inquiry into dual criminality. To establish dual criminality, neither the name of the offense nor the elements of the crime need be precisely identical. Rather, only the essential character of the criminal transaction must be the same. *See Wright*, 190 U.S. at 58 (upholding extradition because "[t]he essential character of the transaction is the same, and made criminal by both" the law of the United Kingdom, which sought extradition, and New York, where the fugitive was arrested). As the Tenth Circuit has explained,

> While dual criminality does not require identical statutes, *Collins v. Loisel*, 259 U.S. at 312, the provisions must be "substantially analogous." *Brauch v. Raiche*, 618 F.2d at 851; *accord Theron v. United States Marshal*, 832 F.2d at 496. Statutes are substantially analogous when they "punish conduct falling within the broad scope" of the same "generally recognized crime." *Brauch v. Raiche*, 618 F.2d at 848 n. 7, 852. Differences in instrumentalities or purposes are not important, so long as the statutes relate to the same general offense. *United States v. Sensi*, 879 F.2d at 893. In other words, when "the laws of both the requesting and the requested party appear to be directed to the same basic evil," *Shapiro v. Ferrandina*, 478 F.2d 894, 908 (2d

4

Cir. 1973), the statutes are substantially analogous, and can form the basis of dual criminality.

*Peters v. Egnor*, 888 F.2d 713, 719 (10th Cir. 1989). This portion of the doctrine is also codified in the treaty, which states, "[I]t shall not matter whether or not the laws of the Contracting Parties place the offense within the same category of offenses or denominate an offense by the same terminology." Treaty, Art. 2(1).

Although CPG's false representation does not constitute the crime called "forgery" in the United States, they are a false statement to a financial institution, an act that violates 18 U.S.C. § 1014. That statute provides in part, "Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation [or] a branch or agency of a foreign bank[2] . . . upon any application . . . shall be" guilty of a felony. The false statement need not be made as part of a formal application, and may even be made orally. *See United States v. Zwego*, 657 F.2d 248, 250 (10th Cir. 1981). In additon, because CPG obtained PIN entry terminals from B&S by means of a false representation, its actions constitute bank fraud, in violation of 18 U.S.C. § 1344. That statute prohibits, among other things, the execution of "a scheme or artifice . . . to obtain . . . property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses [or] representations." As described, CPG obtained PIN entry terminals from B&S based on a false representation. The government does not know whether

---

[2] A "foreign bank" is "any company organized under the laws of a foreign country, a territory of the United States, Puerto Rico, Guam, American Samoa, or the Virgin Islands, which engages in the business of banking, or any subsidiary or affiliate, organized under such laws, of any such company. For the purposes of this chapter the term "foreign bank" includes, without limitation, foreign commercial banks, foreign merchant banks and other foreign institutions that engage in banking activities usual in connection with the business of banking in the countries where such foreign institutions are organized or operating." 12 U.S.C. § 3101(7).

B&S meets the jurisdictional requirements necessary to be a protected financial institution under the statute, although it is very likely a foreign bank. However, as described above, the offenses need not be identical. The Dutch statute is broader, in that it is not limited to false statements made to or fraud on banks. But when applied to financial institutions, the two statutes are "substantially analogous," and "relate to the same general offense," as *Peters* put it. Accordingly, Grynsztein's actions fall under a qualifying United States statute, and the doctrine of dual criminality does not prohibit his extradition for forgery.[3]

WHEREFORE, the government respectfully moves the Court to extradite Grynsztein on all charges, including forgery.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:   s/ Marc Osborne
Assistant United States Attorney
Court ID# A5500796
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1014

---

[3] In *Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973), the fugitives induced victims to invest in a company by giving the victims letters of guarantee from another company, which the fugitives knew didn't have the assets to cover the investments. Israel sought the fugitives' extradition for various offenses, including forgery. The court held that the fugitives' actions did not constitute forgery, because the letters of guarantee really were issued by the company purporting to guarantee the investments. Having reached that conclusion, the court, without further analysis, denied the request to extradite the fugitives on the forgery charges. The court did not consider whether the fugitives' actions might have constituted any other crimes. *Shapiro v. Ferrandina*, 478 F.2d 894, 912 (2d Cir. 1973). However, as far as the opinion reveals, the possibility that extradition could be based on "substantially analogous" offenses was not argued in *Shapiro*. Furthermore, the *Shapiro* fugitives' misrepresentations were not made to banks, and it cannot be determined from the opinion whether the misrepresentations actually violated any substantially analogous statutes. Therefore, *Shapiro* does not preclude extradition of Grynsztein for forgery.

marc.osborne@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on September 10, 2015, I will electronically file the foregoing with the Clerk of the Court.

s/ Marc Osborne<br>
Assistant United States Attorney