UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-mc-80918-UNA

IN THE MATTER OF THE
EXTRADITION OF
ITZHAK AISIK GRYNSZTEIN.

_____/



FILED by _____ D.C.

**OCT 1 5 2015**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CERTIFICATION OF EXTRADITABILITY,
## ORDER OF COMMITMENT
## AND INCORPORATED MEMORANDUM OPINION

THIS CAUSE came before the Court for an extradition hearing on September 9, 2015.

The United States of America, acting on behalf of the Kingdom of the Netherlands, submitted a

request for an order certifying the extradition of Itzhak Aisik Grynsztein (hereinafter

"Defendant") to the Netherlands on the charges of money laundering, forgery, and operating as a

bank without a license. [DEs 3, 23]. For the reasons stated below, this Court **GRANTS** the

request for an order certifying extradition.

### I.      PROCEDURAL BACKGROUND

On July 2, 2015, the United States Attorney's Office filed a Complaint for Provisional

Arrest with a View toward Extradition (hereinafter "Complaint") [DE 3]. In that Complaint, the

Government sought the issuance of a provisional arrest warrant for Defendant based upon a

request from the Kingdom of the Netherlands pursuant to the treaty of extradition between the

United States and the Netherlands. *Id.*   On July 2, 2015, the Court issued an arrest warrant for

Defendant, and he was arrested on July 6, 2015. [DEs 4, 11].

Defendant's Initial Appearance proceeding was conducted on July 7, 2015. [DE 8]. The

Government filed a Response to Defendant's [Oral] Motion for Bond [DE 10]. A hearing was

held on July 8, 2015, and the parties thereafter filed supplemental briefs regarding bond. [DEs

12, 14, 15, 16].   On August 3, 2015, the Court entered an Order denying bond pending extradition [DE 19].  A status conference regarding extradition was held on August 20, 2015. [DE 22].  Both sides agreed to re-set the status conference for September 8, 2015.  *Id.*  The Government filed its extradition request and related documents on August 31, 2015.  [DE 23]. The Court held a status conference regarding extradition on September 8, 2015, and the parties requested that the extradition hearing be held on September 9, 2015.  [DE 24].  After the hearing, the Government filed its Motion for Extradition on Forgery [DE 29], Defendant filed his Supplemental Memorandum Regarding Extradition [DE 30], and then the Government filed its Response to Defendant's Supplemental Memorandum Regarding Extradition [DE 31].

### The September 9, 2015 Extradition Hearing

At the September 9, 2015 extradition hearing, the Government was represented by AUSA Marc Osborne.  Defendant was present and represented by Dennis Kainen, Esq.  At the request of the Government, the Court admitted Government's Exhibits 1-3, which are the three exhibits attached to its Notice of Filing of Extradition Request and Related Documents [DE 23].  The Court also admitted Government's Exhibit 4 under seal, which is the exhibit attached to the Government's Supplement to Notice of Filing of Extradition Request and Related Documents [DE 26].   All Government exhibits were admitted without objection by defense counsel. Defendant did not introduce any evidence.

The Government conceded at the extradition hearing that it could not establish dual criminality with regard to the forgery charge against Defendant.  Defendant argued that the Government also could not establish dual criminality for the operating as a bank without a license and the money laundering charges.  The Government maintained that the statutes for the

2

underlying crimes in the extradition proceeding do not need to have exactly the same elements as the criminal statutes in the United States; rather, the United States and Dutch statutes must deal roughly with the same type of charge or evil. The Government cited 18 U.S.C. § 1956(a)(1)(B)(i) as the similar United States statute for the money laundering charge and 18 U.S.C. § 1960 as the similar United States statute for the operating as a bank without a license charge.

With regard to probable cause, Defendant argued that the extradition request is so broad that he does not have sufficient notice of what he did wrong, so the request violates the treaty on its face. Defendant explained that certain of the activities described in the extradition request are outside of the statute of limitations for the crimes alleged and that the extradition request refers to certain activities which relate to a past charge for which Defendant was previously acquitted. Defendant did acknowledge that, if the Government establishes probable cause for the operating as a bank without a license charge, then there is probable cause for the money laundering charge; on the other hand, if the Government does not establish probable cause for the operating as a bank without a license charge, there can be no probable cause for the money laundering charge. Defendant also explained that he received advice of counsel who ensured him that his business activities were legal.

The Government asserted that the request for extradition is not overly broad and that Article 9, Paragraph 26, of the treaty contains a low standard for specificity. The Government explained that the extradition request is like a speaking Indictment in the United States federal system and that defense counsel clearly understands the charges because he has competently explained them in court and argued against them. The Government emphasized that the

extradition request lays outs the years when the events allegedly occurred, how much money was involved, and where it came from.   The Government explained that Defendant's arguments regarding advice of counsel and double jeopardy should not affect the probable cause analysis. Finally, the Government stated that the conduct underlying the offenses alleged in the extradition request may have begun in 2007, but it ended in 2013.   Therefore, a statute of limitations defense is not meritorious.

### Government's Motion for Extradition on Forgery

On September 10, 2015, the day after the extradition hearing, the Government submitted its Motion for Extradition on Forgery [DE 29].[1]   The prosecutor argues that he had little time to prepare for the extradition hearing, that he did not know what Defendant's arguments were going to be prior to the hearing, and that subsequent research revealed that "the forgery charge does satisfy the requirement of dual criminality, and that extradition of Grynsztein on that charge is appropriate." *Id.* at pp. 1-2.   The Government acknowledges that the Court could refuse to consider its motion but requested that the Court exercise its discretion to entertain the motion. *Id.* at p. 2.   It contends that, while Defendant's false representations do not constitute the crime to which we refer as forgery in the United States, they would violate other criminal statutes— namely, 18 U.S.C. §§ 1014 and 1344.   *Id.* at pp. 5-6.   The Government argues that the United States and Dutch criminal statutes need not be identical, and that they are "substantially analogous" and "relate to the same general offense." *Id.* at pp. 4-5.

### Defendant's Supplemental Memorandum

On September 18, 2015, Defendant filed his Supplemental Memorandum Regarding

---

[1] By this motion, the Government seeks to withdraw the concession it made at the extradition hearing  that it could not establish dual criminality with regard to the forgery charge against Defendant.

Extradition [DE 30].  He first contends that the Court should not permit the Government to withdraw its representation at a public hearing that it could not establish dual criminality regarding the forgery charge.  *Id.* at p. 2.  Defendant explains that he has been prejudiced by the Government changing its mind on the forgery charge.  *Id.*  Next, Defendant argues that the Government has not met its burden of establishing dual criminality as to the forgery.  *Id.* at pp. 2-3.

Defendant also maintains that he cannot be extradited for any allegation that took place during 2006 because he was already acquitted of the charges that relate to the "Operation King Cross 2007." [DE 30, pp. 3-4].  Next, Defendant explains that the "Dutch government is seeking his extradition for allegations relating to a greater period of time than they are alleging in the actual charges in the Netherlands." *Id.* at pp. 4-5.  He accuses the Dutch government of "not acting in good faith" and "seeking extradition for a time period much broader than what it has filed in the Netherlands." *Id.* at p. 5.

Attached to the memorandum is documentation relating to "Operation King Cross 2007" [DE 30-1], as well as correspondence and attachments from Arnoud Comans, Esq., an attorney in Amsterdam, Netherlands [DE 30-2].

### Government's Response to Defendant's Supplemental Memorandum

On September 29, 2015, the Government filed its Response to Defendant's Supplemental Memorandum Regarding Extradition [DE 31].  The Government first contends that the Court should exercise its discretion to "excuse [its] mistaken concession of the dual criminality issue", especially since Defendant was not prejudiced by the mistake.  *Id.* at p. 8.  It explains that the evidence presented establishes that Defendant's alleged forgery would also be illegal in the

United States pursuant to 18 U.S.C. §§ 1014 and 1344 and that the Government is not required to prove that B&S Cardservice GmbH ("B&S") is a foreign bank since it is not required to prove the jurisdictional elements of forgery. *Id.* at pp. 10-13.   Next, the Government asserts that Defendant's double jeopardy argument is without merit because Article 5 of the extradition treaty requires that the prior acquittal have occurred in the United States.   *Id.* at pp. 15-16. Finally, the Government contends that Defendant has not cited any law or language from the treaty that supports his position that the Court should not certify the case because of a "purported discrepancy between the extradition request and the charging document." *Id.* at p. 19.

## II.   ANALYSIS OF APPLICABLE EXTRADITION LAW

Extradition hearings are conducted pursuant to 18 U.S.C. §§ 3184 - 3196.  A foreign or international extradition proceeding is not a criminal case. *Martin v. Warden, Atlanta, Pen.*, 993 F.2d 824, 829 (11th Cir. 1993); *Kamrin v. United States*, 725 F.2d 1225, 1227-28 (9th Cir. 1984).  "Foreign extraditions are *sui generis* in nature, neither civil nor criminal in nature and set forth their own law." *In re Extradition of Mohammad Safdar Gohir*, 2014 WL 2123402, at *6 (D. Nev. 2014); *In re Extradition of Vargas*, 978 F. Supp. 2d 734, 744 (S.D. Texas 2013).  The process of formal extradition is a diplomatic process, governed generally by the applicable extradition treaty and the federal extradition statute, 18 U.S.C. §§ 3181–3196. *In re Extradition of Mohammad Sadfar Gohir, supra*, at *6.

Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to international extradition proceedings. Fed. R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3); *Afanesjev v. Hurlburt*, 418 F.3d 1159, 1164-65 (11th Cir. 2005), *cert. denied,* 546 U.S. 993 (2005); *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981); *Bovio v. United States*, 989

6

F.2d 255, 259 n.3 (7th Cir. 1993).

"An extradition hearing is not a trial on the merits and does not require proof sufficient to satisfy the factfinder in a criminal trial." *Cheng Na-Yuet v. Hueston*, 734 F. Supp. 988, 995 (S.D. Fla. 1990). The purpose of an extradition proceeding is to decide the sufficiency of the charge under the treaty, not guilt or innocence. *See Neely v. Henkel*, 180 U.S. 109, 123 (1901); *Afanasjev v. Hulburt, supra* at 1165 n.11; *Martin v. Warden, supra*, 993 F.2d at 828.

A certification of extradition may be and usually is based entirely on the authenticated documentary evidence and information provided by the requesting government. *See, e.g., Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433-1434 (S.D. Fla. 1993) (documents and statements sufficient for extradition to Honduras), *aff'd* 28 F.3d 116 (11th Cir. 1994). "It is exceedingly rare for the Government to submit anything other than documents in support of an extradition request." *In re Extradition of Nunez-Garrido, supra*, 829 F. Supp. 2d 1277, 1287 (S.D. Fla. 2011). According to the United States Supreme Court, "one of the principal objectives of the extradition statute is 'to obviate the necessity of confronting the accused with the witnesses against him' by enabling the requesting country to meet its burden of proof through documents subject only to requirements necessary to guarantee their authenticity." *Id.* (quoting *Bingham v. Bradley*, 241 U.S. 511, 517 (1916)). "Requiring the requesting country 'to send its citizens to another country to institute legal proceedings would defeat the whole object of the treaty.'" *Id.* (quoting *Bingham*, 241 U.S. at 517).

Although an extraditee is permitted to present evidence tending to explain or clarify the proof ("explanatory evidence"), evidence which tends merely to contradict the requesting country's case ("contradictory evidence") is inadmissible. *Cheng Na-Yuet*, 734 F. Supp. at 995.

7

"Because of the circumscribed nature of an extradition proceeding, the importance of international obligations and the inherent practical difficulties in international proceedings, a defendant's right to challenge evidence against him at an extradition hearing is limited." *Nunez-Garrido,* 829 F. Supp. at 1281.   "Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible." *Barapind v. Enomoto,* 400 F.3d 744, 749 (9th Cir. 2005) (quoting *Mainero v. Gregg,* 164 F.3d 1199, 1207 n.7 (9th Cir. 1999)); *see also Ordinola v. Hackman,* 478 F.3d 588, 608-09 (4th Cir. 2007); *Hoxha v. Levi,* 465 F.3d 554, 561 (3d Cir. 2006).   Courts have determined that affirmative defenses to the merits of the charge(s) are not to be considered at extradition hearings. *See Charlton v. Kelly,* 229 U.S. 447, 462 (1913); *Collins v. Loisel,* 259 U.S. 309, 316-17 (1922); *Hooker v. Klein,* 573 F.2d 1360, 1368 (9th Cir. 1978); *DeSilva v. DiLeonardi,* 125 F.3d 1110, 1112 (7th Cir. 1997).   An extraditee is not permitted to introduce evidence that seeks to impeach the credibility of the demanding country's witnesses. *Bovio v. United States,* 989 F.2d 255, 259 (7th Cir. 1993).

Extradition hearings are akin to a preliminary hearing.  *In re Extradition of Shaw,* Case No. 14-CV-81475-WM, 2015 WL 3442022, at *4 (S.D. Fla. May 28, 2015); *Afanasjev v. Hurlburt,* 418 F.3d 1159, 1164 (11th Cir. 2005).  Accordingly, the magistrate judge "does not inquire into the guilt or innocence of the accused." *Id.* (quoting *Kastnerova v. United States,* 365 F.3d 980, 987 (11th Cir. 2004)).   Instead, the magistrate judge only looks to see if there is evidence sufficient to show probable cause.  *Id.  See also Nunez-Garrido,* 829 F. 2d at 1282.

8

Extradition is primarily the prerogative of the executive branch. As stated by the Eleventh Circuit:

> Extradition ultimately remains an Executive function. After the courts have completed their limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender. The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations which an extradition magistrate may not.

*Martin*, *supra*, 993 F.2d at 829. Because extradition is primarily the prerogative of the executive branch, the scope of the court's inquiry during an extradition hearing is limited. *See Hoxha*, 465 F.3d at 560. The central issue at an extradition hearing is whether there is competent evidence to establish probable cause that the defendant committed the offense(s) underlying the request for extradition. *See Lo Duca v. United States*, 93 F.3d 1100, 1104 (2d Cir. 1996). The finding of probable cause is specifically required by 18 U.S.C. 3184. *See Hoxha, supra*, 465 F.3d at 560 (interpreting the "sufficient" evidence standard set forth in 18 U.S.C. 3184 as requiring probable cause); *see Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1969)[2] (during a Section 3184 extradition hearing, a magistrate determines the sufficiency of evidence establishing reasonable ground for the accused's guilt), *cert. denied*, 398 U.S. 903 (1970). An extradition certification is in order where:

(1) The judicial officer is authorized to conduct the extradition proceeding;

(2) The court has jurisdiction over the fugitive;

(3) The applicable treaty is in full force and effect;

(4) The crimes for which surrender is requested are covered by the applicable treaty; and

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

(5) There is sufficient evidence to support a finding of probable cause as to each charge

for which extradition is sought.

*See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994); *Hill v. United States*, 737 F.2d 950, 951 n.1 (11th Cir. 1984).   Extradition is appropriate where "the magistrate has jurisdiction, [where] the offense charged is within the treaty and, by a somewhat liberal extension, [where] there [is] any evidence warranting the finding that there was reasonable ground to believe the accused guilty."  *See Fernandez*, 268 U.S. at 312.

Defendant is not contesting that the undersigned is authorized to conduct the extradition proceeding, that the Court has jurisdiction over him, that the applicable treaty is in full force and effect, or that he is the person being sought by the Netherlands.  The Court will therefore now turn to the arguments against extradition which have been raised by Defendant.

## III.   THE DEFENDANT'S ARGUMENTS AGAINST EXTRADITION

The Defendant has raised two main arguments against his extradition to the Netherlands.[3] Defendant's arguments have been carefully considered by the Court. The Court summarizes and discusses Defendant's arguments below.

### A. *No Probable Cause:*

The Defendant argues that there is no probable cause for the charges lodged against him in the Netherlands.  He asserts numerous reasons why probable cause is lacking.  In summary, he argues that the facts underlying the charges brought against him in the Netherlands are so

---

[3] Defendant made an argument at the status hearing regarding extradition that a public prosecutor in the Netherlands improperly signed the arrest warrant [DE 23, Ex. 2, "National Prosecutor's Office Arrest Warrant"] when Article 9 of the treaty required a judicial officer to do so.  At the extradition hearing,  however, Defendant abandoned this argument and conceded that a public prosecutor is a judicial officer under Dutch law.

amorphous and vague that the Government cannot establish probable cause. Defendant also makes secondary arguments about double jeopardy, the statute of limitations, and the advice of counsel defense. Finally, he argues that the Dutch government is "trying to pull a fast one" and may be engaged in fraud by seeking extradition for a time period that is much broader than what is included in the criminal paperwork filed in the Netherlands. [DE 30, pp. 3-4].

This Court's role in this extradition proceeding is not to determine the guilt or innocence of Defendant, but rather to determine whether probable cause exists to support the charges lodged against him in the Netherlands. "[P]robable cause requires only a probability or substantial chance of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Probable cause does not require an officer's suspicion to be more likely true than false. *Texas v. Brown*, 460 U.S. 730, 742 (1983). Probable cause means "'the existence of a reasonable ground to believe the accused guilty'" of the crime charged. *Escobedo v. United States*, 623 F.2d 1098, 1102 (5th Cir. 1980) (quoting *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971)); *Nunez-Garrido*, 829 F. Supp. 2d at 1282. "Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *accord Escobedo v. United States, supra*.

The Court has very carefully reviewed and considered the detailed formal extradition request submitted by the Netherlands [DE 23, Govt. Ex. 1-3; DE 26, Sealed Govt. Ex. 4]. A review of the above described documents, when considered in totality, leads to the inescapable conclusion that probable cause supports the charges brought against Defendant in the Netherlands. The extradition request contains an overview of the facts and offenses and discusses various allegations regarding Defendant starting in 2006 and ending in 2013. The

11

extradition request makes the following allegations.  CPG Worldwide NV ("CPG"), a company owned by Defendant and others, was incorporated in Curaçao in 2009.  In 2010, CPG was registered in Amsterdam as a trading company in pharmaceuticals.  Soon after, CPG changed its objective to the sale of women's wear.  CPG made false representations in order to open a business bank account and to enter into a contract with B&S for client payments through PIN entry terminals.  Defendant moved the PIN terminals from the Netherlands to Curaçao and used them for transactions that can only be carried out by licensed financial service providers. Defendant sold cash currency to Venezuelans against credit card payments, falsely passed off the sale of cash currency in the annual accounts as sales of clothing by CPG in Amsterdam, and transferred money through his primary business account to bank accounts in the United States, Curaçao, and Panama.  B&S terminated its customer relationship with Defendant in 2013 after learning that PIN entry terminals had been moved from Amsterdam to Curaçao and were "almost exclusively used for payments in Curaçao with Venezuelan credit cards."  Defendant's profits from these activities was $13.5 million.

The three criminal offense charged against Defendant are summarized in the extradition request as follows:

> 1. Service provision with a license
> The financial services provided through CPG consists—succinctly put—of collecting cash currency, exchanging the currency and moving it to bank accounts.  These services are qualified as money transaction services that can exclusively be effected with a license and under supervision.  In as far as these services can be effected with a license, several conditions apply, like a correct description of the transaction and an obligation to report any suspicious transactions to FIU in case of suspicious circumstances.
>
> 2. Forgery of documents
> In the course of time, the Accused made their modus operandi more professional, presumably also because of previous Operations King Cross and Bientu.  At any

rate, from 2010 they intentionally cooperated in setting up and continuing a front store—apparently required in this modus operandi—misleading the Chamber of Commerce [*Kamer van Koophandel*] and financial institutions in the Netherlands and Germany.   Subsequently, the criminal activities were falsely recorded and presented in the annual accounts of the Monterrey Group as (Free Zone) proceeds from clothing wholesale activities realized outside Curaçao.

3.   Habitual money laundering
There is a suspicion that the Accused collected cash that constituted the proceeds from crime.   I would like to refer again to Operations King Cross and Bientu, which demonstrate that this modus operandi is used to move cash that constitutes the proceeds from crime and/or if there would be a legal origin for these cash amounts, they were deliberately concealed from the tax authorities, at any rate leading to the part not surrendered constituting the proceeds from a (fiscal) crime.

[DE 23, Ex. 1, p. 6].

The Court finds that the allegations in the extradition request are not overly ambiguous or overbroad.   The extradition request does, in fact, establish probable cause for each of the three charges alleged against Defendant and does give him proper notice of those charges.   Moreover, the Court finds that none of Defendant's specific arguments regarding probable cause have merit, as discussed below.

## Advice of Counsel

First, the Court notes that Defendant seemingly abandoned his advice of counsel defense as it pertains to the probable cause analysis by failing to mention it in his Supplemental Memorandum.   Regardless, the advice of counsel defense merely controverts the existence of probable cause, or raises a defense, so it is not admissible.   Defendant is free to raise this argument in the Netherlands, but it has no bearing on extradition.

## Double Jeopardy/Prior Acquittal

There is an explicit provision for double jeopardy in the treaty.   Article 5 states that extradition should not be granted when "(a) The person sought . . . has been tried and . . .

13

acquitted by the Requested State for the offense for which extradition is requested or, (b) The person sought is otherwise immune from prosecution for the offense for which extradition is requested by reason of the law in the Requested State relating to prior jeopardy." [Ex. 3, DE 25]. This treaty provision does not apply in this case because it is undisputed that Defendant has not been acquitted in the United States of the same or even a similar offense; rather, he was previously acquitted of certain criminal charges in the Netherlands. Additionally, the "Operation King Cross 2007" allegations are only mentioned in the extradition request with regard to the forgery and money laundering charges and are not the only allegations upon which the Netherlands relies with regard to those charges.

## Statute of Limitations

While Article 6 of the treaty does provide that extradition shall not be granted when the statute of limitations in the Netherlands bars the charges, it does not appear that there is a statute of limitations issue here. Defendant attached September 16, 2015 correspondence from Arnoud Comans, an attorney for Defendant in the Netherlands, to his supplemental memorandum. [DE 30-2]. In that correspondence, the attorney states that the "*vordering bewaring*[4] is well within the scope of the state of limitations, but the time frame set in the extradition request is definitely not. One must argue that the *vordering bewaring* is the deed of prosecution that marks the interruption of limitations and therefore that the prosecutor can only prosecute from June 2009 onwards, and certainly not prior to that." [DE 30-2, p. 4].

First, Defendant has only provided information regarding the statute of limitations for banking without a license and not for the other two crimes alleged. Second, many of the

---

[4] The "vordering bewaring" to which the attorney refers is the "Application for remand in custody" from National Public Prosecutors' Office in the Netherlands. It is attached to the correspondence from the attorney as "Annex 1." See DE 30-2.

14

allegations pertaining to that specific charge are post-2009, and the actual arrest warrant states that Defendant committed the crime of banking without a license between July 21, 2014, and June 22, 2015. On the face of the extradition request, there does not appear to be a statute of limitations issue.

### Discrepancies Between Extradition Request and Criminal Document from the Netherlands

Finally, Defendant argues that the Netherlands has been disingenuous by including different facts and time periods in its extradition request and in its *"vordering bewaring."* First, Defendant has not provided any authority that establishes that the Court should even be considering the "Application for remand in custody" from the Netherlands. Second, the Court finds that the difference in the dates and locations stated and the different degrees of detail listed in the extradition request versus in the *"vordering bewaring"* should not affect this Court's finding of probable cause. The Netherlands' decision to include a broader set of dates and locations, as well as more allegations against Defendant in general, in the extradition request was perfectly reasonable. Defendant has cited no case law that states that an extradition request must track the language of a foreign country's internal criminal documents.

In conclusion, the Court finds that the formal extradition request submitted by the Netherlands does establish probable cause for the charges brought against Defendant in the Netherlands.

### B. *Dual Criminality:*

Defendant argues that the pending extradition proceeding should be dismissed in light of the Government's failure to satisfy the "dual criminality" requirement. Pursuant to Article 2 of the annex to the applicable treaty:

15

Extraditable offenses under this Treaty are:

(a) Offenses referred to in the Appendix to this Treaty which are punishable under the laws of both Contracting Parties;

(b) Offenses, whether listed in the Appendix to this Treaty or not, provided they are punishable under the Federal laws of the United States of America and the laws of the Kingdom of the Netherlands.

In this connection it shall not matter whether or not the laws of the Contracting Parties place the offense within the same category of offenses or denominate an offense by the same terminology.

[Ex. 3, DE 25].[5]

The Court first finds that the Government has satisfied the "dual criminality" requirement as to all three charges. While the Government did initially state that it could not establish dual criminality as to the forgery charge, the Court finds that Defendant was not prejudiced by the Government's change in position as the Government filed its motion one day after the hearing stating that it could, in fact, establish dual criminality for forgery. Very little time passed between the hearing and the filing of the motion, and the Court had not yet entered an extradition order because Defendant's time to brief the legal issues in this case had not yet passed. Moreover, Defendant has had the opportunity to respond to the Government's request that the Court extradite Defendant on all charges, including forgery, so the Court has no due process concerns. Defendant generally states that he has been prejudiced by the prosecutor's withdrawal of his concession that the Government could not prove dual criminality as to the forgery charge, but does not specifically state how he has been prejudiced.

---

[5] The language of the treaty codifies the general principle of dual criminality as established by case law. "The Supreme Court has held that the doctrine of dual criminality 'does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions." *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1307 (11th Cir. 2000) (quoting *Collins v. Loisel*, 259 U.S. 309, 312 (1922)).

16

The Court does not see how Defendant is prejudiced by the Government's change in position from the September 9th extradition hearing to its September 10th filing.  The Court does agree that a prosecutor's concession is important and should not lightly be disregarded or withdrawn.  If the Court believed that the prosecutor in this case was proceeding in bad faith or in an effort to gain a tactical advantage, the Court would not allow the prosecutor to withdraw his concession.  However, the Court finds that the prosecutor is proceeding in good faith and made a simple mistake at the extradition hearing, which he immediately corrected the next day.  There is no jury in this matter, and the Government's faulty concession did not cause Defendant to lose any rights or the ability to argue his position.  We all make mistakes, and this mistake by the prosecutor has not harmed Defendant in any way and is excusable.  The Court will not hold the prosecutor's erroneous concession against the Government under the facts of this case.

Defendant's only substantive arguments against dual criminality are that (1) the evidence does not establish the jurisdictional element of forgery because the Government has not shown that B&S is a foreign bank and (2) that the evidence does not establish that CPG made a false representation or obtained property owned by, or under the custody or control of, a financial institution by means of false or fraudulent pretenses or representations.  *See* DE 30, pp. 2-3.  First, the Government is not required to prove that B&S is a foreign bank, but rather only must prove, if at all, that it is likely or probable that B&S is a foreign bank as the Government's burden is only that of probable cause.  However, the Government has cited several cases that stand for the premise that courts do not consider jurisdictional elements when conducting a dual criminality analysis in an extradition case.  *See, e.g., Parsons v. Feather*, No. 3:13-CV-01905-JO, 2014 WL 2123983, at *3 (D. Or. May 19, 2014); *In re Extradition of Chan Hon-Ming*, No.

17

06-M-296 (RLM), 2006 WL 3518239, at *6 & n. 10 (E.D.N.Y. Dec. 6, 2006); *In Matter of Extradition of Ernst*, 1998 WL 395267, at *5 (S.D.N.Y. July 14, 1998).  This Court is to look at whether the United States and Dutch statutes deal roughly with the same type of charge or evil, not whether the elements are exactly the same.

Second, having independently reviewed the extradition request, the evidence laid out therein does establish that that Defendant made a false representation to B&S and that CPG's false representation to B&S was made for the purposes of getting B&S to enter into a contract with CPG and obtaining B&S's PIN entry terminals.  The facts underlying the forgery charge are sufficient to establish probable cause that Defendant violated 18 U.S.C. § 1014 and/or 18 U.S.C. § 1344.

The documents contained in the extradition packet indicate that Defendant has been charged in the Netherlands with crimes relating to operating a bank without a license, forgery, and money laundering. These alleged crimes violate Articles 420(a), 420(b), and 225 of the Dutch Penal Code, as well as Articles 2:3(a) and 2.54(i) of the Dutch Financial Supervision Act and/or exchange services Articles 1 and 2 of the Dutch Economic Offenses Act.  Additionally, the crimes with which Defendant is charged in the Netherlands (money laundering, forgery, and operating a bank without a license) would subject Defendant to prosecution in the Southern District of Florida as these alleged crimes violate 18 U.S.C. § 1956(a)(1)(B)(i), 18 U.S.C. § 1014 and/or 18 U.S.C. § 1344, and 18 U.S.C. § 1960.  As noted in the treaty, the Netherlands and the United States need not place the offense within the same category of offenses or denominate an offense by the same terminology in order for dual criminality to exist.

The Court notes that Defendant does not make any specific legal arguments regarding the

dual criminality analysis as to the money laundering or operating a bank without a license charges. Having carefully reviewed the United States statutes listed by the Government and the crimes charged by the Netherlands in the extradition request, the Court finds that the requirement of dual criminality has clearly been satisfied in this case.

## VI.    COURT'S FINDINGS AS TO EXTRADITION

The Court has carefully reviewed all the evidence, including the authenticated original Formal Request for Extradition together with all of its Declarations and exhibits, the Defendant's exhibits, and the parties' arguments and filings.

Based upon this review, the Court **FINDS** as follows:

1.   The undersigned judicial officer is authorized under Title 18, United States Code, Section 3184, to conduct an extradition hearing;

2.   The Court has personal jurisdiction over the defendant and subject matter jurisdiction over the case;

3.   There is currently in force an extradition treaty between the United States of America and the Kingdom of the Netherlands.

4.   The Defendant is charged in the requesting state [the Kingdom of the Netherlands] with the criminal offenses of forgery, money laundering, and operating as a bank without a license;

5.   The criminal offenses of forgery, money laundering, and operating as a bank without a license are extraditable offenses within the meaning of the extradition treaty;

6.   The requesting state [the Kingdom of the Netherlands] seeks the extradition of the Defendant for the criminal offenses of forgery, money laundering, and operating as a

19

bank without a license;

7.  There is probable cause to believe that Itzhak Aisik Grynsztein, the defendant brought before this Court, is the same person wanted by the Kingdom of the Netherlands, and further, there is probable cause to believe that said Defendant committed the crimes of forgery, money laundering, and operating as a bank without a license as charged against him in the Kingdom of the Netherlands.

For reasons set forth above, the Government's request for an order certifying the extradition of Itzhak Aisik Grynsztein is **GRANTED**. Additionally, for the reasons provided above, the Government's Motion for Extradition on Forgery [DE 29] is **GRANTED**.   As specified in 18 U.S.C. § 3184,

**IT IS THERFORE ORDERED** that a certified copy of this Certification of Extraditability and Order of Commitment, together with a copy of all the testimony and evidence taken before the undersigned, be forwarded without delay by the Clerk of the Court to the Secretary of State, Department of State, to the attention of the Office of the Legal Adviser, that a warrant may issue upon the requisition of the proper authorities of the Kingdom of the Netherlands, for the surrender of Defendant, according to the stipulations of the applicable treaty or convention, and that Defendant, be committed to the custody of the United States Marshal for this District, to be held at the Federal Detention Center, Miami, Florida, or other suitable facility, pending final disposition of this matter by the Secretary of State and surrender of Defendant to the designated agents of the Kingdom of the Netherlands.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of October, 2015.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE